# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID A. BARDES, individually, as )
a taxpayer,                        )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        1:11CV340
                                   )
MASSACHUSETTS MUTUAL LIFE          )
INSURANCE COMPANY,                 )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Application for Leave to Proceed <u>In</u> <u>Forma</u> <u>Pauperis</u> (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2). For the reasons that follow, the Court will grant Plaintiff's request to proceed as a pauper with certain qualifications.

## LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary

litigants. In particular, litigants suing in forma pauperis d[o]
not need to balance the prospects of successfully obtaining relief
against the administrative costs of bringing suit." <u>Nagy v.
Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004). To
address this concern, the <u>in</u> <u>forma</u> <u>pauperis</u> statute provides that
"the court shall dismiss the case at any time if the court
determines that – . . . (B) the action or appeal – (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United
States Supreme Court has explained that "a complaint, containing as
it does both factual allegations and legal conclusions, is
frivolous where it lacks an arguable basis either in law or in
fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). "The word
'frivolous' is inherently elastic and not susceptible to
categorical definition. . . . The term's capaciousness directs
lower courts to conduct a flexible analysis, in light of the
totality of the circumstances, of all factors bearing upon the
frivolity of a claim." <u>Nagy</u>, 376 F.3d at 256-57 (some internal
quotation marks omitted). The Supreme Court further has identified
factually frivolous complaints as ones involving "allegations that
are fanciful, fantastic, and delusional. As those words suggest,
a finding of factual frivolousness is appropriate when the facts

alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (internal citations and quotation marks omitted). In considering such matters, this Court may "apply common sense." Nasim, 64 F.3d at 954.

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). An assessment of whether a complaint "states on its face a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).[1]

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint). Accord Atherton v. District of

In his Complaint, Plaintiff has alleged that he worked as an "agent of the Defendant from 1986 to 1998," but that their business relationship was "permanently severed as a result of a multiple party lawsuit that was settled in 1999." (Docket Entry 2 at 2-3.) According to the Complaint, following that settlement, Defendant "began an immediate scheme and device, with malice and contempt, to cause permanent, irreparable, and perpetual injury to the Plaintiff." (Id. at 3.) Specifically, Plaintiff's Complaint asserts that, for every tax year from 1998 to the present, "Defendant has issued a fake, false, and fraudulent W2 wage statement [regarding Plaintiff] to the US Treasury, the Internal Revenue Service, the Social Security Administration, to the States of North Carolina, South Carolina, Georgia, Florida, and Pennsylvania, and . . . database systems maintained by the states and the federal government." (Id.; see also id. at 7-8 (detailing income Defendant allegedly falsely attributed to Plaintiff).)

In his Complaint, Plaintiff expressly has stated that "[t]he terms and conditions of [his prior settlement with Defendant] are not an object of [the instant] suit[.]" (Id. at 3; see also id. at 14 ("I do realize and preserve, however, my rights to claims and

---

Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 129 S. Ct. at 1950, respectively)), cert. denied, 130 S. Ct. 2064 (2010).

damages not addressed in this suit, but are [sic] as a result of
[Defendant's] actions in the breaching of [the prior] lawsuit
agreements.").) Instead, Plaintiff contends that, with his instant
Complaint, he seeks to present "allegations of fraud and fraud
related issues outlined [sic], but <u>not limited to</u>, Title 18 of the
United States Code." (<u>Id.</u> at 2 (emphasis added).) More
specifically, under the heading "The Laws that [Defendant] has
violated" (<u>id.</u> at 8), the Complaint sets out the following:

> US Code sections, § 1030, § 1033, § 1028, §1034, § 1037,
> and § 1001(a)(1)(2)(3). Further to §7204 and § 1341.
> Further to activities defined by §1961 prohibited by
> § 1962, and remedies available under § 1964. As to
> [Defendant's] ability to claim a tax deduction for the
> falsely reported income it becomes a fraud against the
> United States and is covered under § 1001, § 1002, and
> § 1031.

(<u>Id.</u> at 8-9.)

Plaintiff thus has expressed a general intent to pursue a
cause (or causes) of action for fraud, including under Title 18 of
the United States Code, and has identified 12 specific statutory
sections within said Title (i.e., §§ 1001, 1002, 1028, 1030, 1031,
1033, 1034, 1037, 1341, 1961, 1962, and 1964), as well as one
statutory section (i.e., § 7204) that does not appear in Title 18
of the United States Code, but that does appear in Title 26 of the
United States Code. Title 18 of the United States Code sets out a
number of federal criminal offenses, as well as other matters
related to the operation of the federal criminal justice system.
<u>See</u> 18 U.S.C. §§ 2 et seq. Section 7204 of Title 26 of the United

5

States Code establishes a misdemeanor related to the reporting of employment income.  See 26 U.S.C. § 7204.

<u>Fraud and Related Claims under 18 U.S.C. §§ 1001, 1002, 1028, 1030, 1031, 1033, 1034, 1037, and 1341, and 26 U.S.C. § 7204</u>

"Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute . . . ." <u>Tribble v. Reedy</u>, No. 89-6781, 888 F.2d 1337 (table), 1989 WL 126783, at *1 (4th Cir. Oct. 20, 1989) (unpublished) (affirming dismissal of suit "alleg[ing] violations of 18 U.S.C. §§ 241, 1341 and 1343, because each of those statutes constitutes a 'bare criminal statute' which gives no express indication of Congressional intent to create a civil remedy"); <u>see also</u> <u>Federal Sav. & Loan Ins. Corp. v. Reeves</u>, 816 F.2d 130, 137-38 (4th Cir. 1987) (reversing judgment "for violations of 18 U.S.C. §§ 657, 1001, 1006, 1008 and 1014 . . . [because] there is no basis for implying a civil cause of action from these federal criminal code provisions"); <u>Hilgeford v. National Union Fire Ins. Co. of Pittsburgh, Pa.</u>, No. 3:08CV669, 2009 WL 302161, at *4 (E.D. Va. Feb. 6, 2009) (unpublished) ("Neither the mail fraud statute, 18 U.S.C. § 1341, nor the bank fraud statute, 18 U.S.C. § 1344, provides Plaintiff a stand-alone civil cause of action; they are both criminal statutes."), <u>aff'd</u>, 333 Fed. Appx. 784 (4th Cir. 2009); <u>Bradford v. McClellan</u>, No. 3:97CV355-P, 1997 WL 882907, at *5 (W.D.N.C. Nov. 18, 1997) (unpublished) ("The criminal statutes cited by Plaintiffs, 18

U.S.C. §§ 1201, 1341, and 1344, expressly provide for criminal penalties, and no private cause of action exists under them."), aff'd, No. 98-1491, 153 F.3d 720 (table), 1998 WL 462548 (4th Cir. Aug. 5, 1998) (unpublished).

As the foregoing parenthetical citations reflect, two of the United States Code provisions identified by Plaintiff, i.e., Sections 1001 and 1341 of Title 18, cannot support a civil cause of action because they constitute only criminal statutes.  See id. Other decisions have applied the same principles to reject civil claims predicated on four other statutory sections cited by Plaintiff (i.e., 18 U.S.C. §§ 1002, 1028, and 1037, as well as 26 U.S.C. § 7204).  See Gordon v. BAC Home Loan Servicing, LP, No. CV-10-5140-LRS, 2011 WL 1565363, at *2 (E.D. Wash. Apr. 25, 2011) (unpublished) ("Plaintiff's assertion of civil claims based on 18 U.S.C. § 1037 is frivolous."); Marsh v. Iuvale, C/A No. 3:10-3071-CMC-PJG, 2011 WL 780516, at *2 (D.S.C. Feb. 7, 2011) (unpublished) ("The reference to 18 U.S.C. § 1028 in the Complaint cannot establish jurisdiction in this civil action."); Flemings v. City of Dallas, No. 3:10-CV-1188-N-BH, 2010 WL 3938377, at *2 (N.D. Tex. Aug. 21, 2010) (unpublished) (ruling that "claims premised on [18 U.S.C. § 1002] . . . are legally frivolous"); Turner v. Unification Church, 473 F. Supp. 367, 376-77 (D.R.I. 1978) ("The language of section 7204 [of Title 26 of the United States Code] is very limited and clearly only contemplates criminal enforcement[.]").

Similarly, the plain language of Sections 1033 and 1034 of Title 18 of the United States Code makes clear that said statutes afford no civil enforcement mechanism to Plaintiff. <u>See</u> 18 U.S.C. §§ 1033, 1034. More specifically, Section 1033 establishes only criminal penalties for various forms of fraudulent conduct by persons involved in the interstate insurance business and Section 1034 allows only the United States Attorney General (and, thus, by clear implication, not private plaintiffs) to seek civil penalties and injunctions for violations of the criminal prohibitions in Section 1033. <u>See</u> <u>id.</u>[2] Conversely, two other sections within Title 18 of the United States Code identified by Plaintiff, Sections 1030 and 1031, do create avenues for private civil action. <u>See</u> 18 U.S.C. §§ 1030(g), 1031(h). However, neither of those two statutory provisions address the circumstances set forth in Plaintiff's Complaint regarding Defendant's alleged submission of false reports of Plaintiff's income to taxing authorities, in that:

1) Subsection 1030(g) requires proof of a violation of the substantive prohibitions of Section 1030, all of which pertain to the unauthorized accessing of computers, <u>see</u> 18 U.S.C. § 1030(a), (b), and (g); and

2) Subsection 1031(h) allows private civil claims only to redress discrimination "in the terms and conditions of employment

---

[2] Moreover, none of the prohibitions in Section 1033 appear to encompass the type of fraudulent conduct alleged by Plaintiff. <u>See</u> 18 U.S.C. § 1033.

by an employer because of lawful acts done by the employee . . . in furtherance of a prosecution under [Section 1031, which prohibits schemes to defraud (or to obtain property through false statements) in relation to United States government contracts, loans, or the like valued at $1,000,000 or more]," 18 U.S.C. § 1031(h)(1).[3]

In sum, the Court cannot grant Plaintiff pauper status to pursue fraud and fraud-related claims under 18 U.S.C. §§ 1001, 1002, 1028, 1030, 1031, 1033, 1034, 1037, and 1341, or 26 U.S.C. § 7204, because such claims would fail as a matter of law and because the obvious nature of this lack of legal merit would render such claims frivolous. See 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Fraud and Related Claims under 18 U.S.C. §§ 1961, 1962, and 1964

Plaintiff's remaining statutory citations (i.e., to 18 U.S.C. §§ 1961, 1962, and 1964) require further analysis. Said provisions fall within the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, which authorizes both criminal prosecutions and private civil actions in certain circumstances where an individual or entity engages in a pattern of specified criminal conduct, see generally Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481-83, 499-500 (1985). In this regard,

---

[3] In other words, Plaintiff's Complaint does not allege any factual matter, which (if believed) would allow a fact-finder to adjudge that Defendant engaged in any unauthorized accessing of a computer (as needed to state a claim under Section 1030(g)) or that Defendant discriminated against Plaintiff in the terms and conditions of his employment because he assisted in any federal criminal prosecution regarding fraud or false statements as to a $1,000,000 United States government contract or loan (as needed to state a claim under Section 1031(h)).

under Section 1964, "[a]ny person injured in his business or property by reason of a violation of [S]ection 1962 . . . may sue therefor . . . and shall recover threefold for damages he sustains and the cost of the suit . . . ." 18 U.S.C. § 1964(c).

Section 1962, in turn, prohibits:

1) "any person who has <u>received any income</u> derived, directly or indirectly, <u>from a pattern of racketeering activity</u> . . . <u>to use</u> or invest . . . any part of <u>such income</u>, or the proceeds of such income, <u>in acquisition of any interest in, or the establishment or operation of, any enterprise</u> which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a) (emphasis added);

2) "any person <u>through a pattern of racketeering activity</u> . . . <u>to acquire or maintain</u> . . . <u>any interest in or control of any enterprise</u> which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b) (emphasis added);

3) "any person <u>employed by or associated with any enterprise</u> engaged in, or the activities of which affect, interstate or foreign commerce, <u>to conduct</u> or participate . . . in the conduct of <u>such enterprise's affairs through a pattern of racketeering activity</u>," 18 U.S.C. § 1962(c) (emphasis added); and

4) "any person <u>to conspire</u> to violate any of the [foregoing prohibitions]," 18 U.S.C. § 1962(d) (emphasis added).[4]

Finally, of relevance to this case, Section 1961 defines certain terms used in the RICO Act, including by declaring that the words "'racketeering activity' means [, inter alia,] . . . any act which is indictable under . . . [T]itle 18, United States Code[,] . . . [S]ection 1341 (relating to mail fraud) [and] [S]ection 1343 (relating to wire fraud) . . . ." 18 U.S.C. § 1961(1).

For present purposes, the Court will assume that Defendant's alleged repeated, intentional submission to taxing authorities of false reports regarding Plaintiff's income for the purpose of harming Plaintiff: 1) would constitute a "scheme to defraud" within the meaning of Sections 1341 and 1343; and 2) would support a reasonable inference that Defendant executed said scheme by using the United States Mail or an interstate commercial carrier (so as to come within the reach of Section 1341) and/or an interstate wire communication, such as e-mail or some other form of computer-based communication (so as to come within the reach of Section 1343). With these assumptions, Plaintiff's Complaint has alleged that Defendant harmed him through a "pattern of racketeering activity"; however, as the quotations from the RICO Act set out above reflect,

---

[4] A "'person' includes any individual or entity capable of holding . . . [an] interest in property," 18 U.S.C. § 1961(3), and an "'enterprise' includes any individual . . . [or] legal entity, and any union or group . . . associated in fact although not a legal entity," 18 U.S.C. § 1961(4).

the RICO Act does not permit civil damage actions based on a general showing of that sort.

To the contrary, to proceed with a civil RICO Act claim, a plaintiff must show that the defendant:

1) used "income . . . from a pattern of racketeering activity . . . in [the] acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a);

2) "through a pattern of racketeering activity . . . acquire[d] or maintain[ed] . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b);

3) while "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, . . . [conducted] such enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. § 1962(c); or

4) "conspire[d] to [commit] any of the [foregoing acts]," 18 U.S.C. § 1962(d).

Plaintiff's Complaint, however, contains no factual matter that would allow a fact-finder to adjudge that Defendant:

1) used any income derived from its alleged submission of fraudulent reports about Plaintiff to establish or to operate any enterprise (so as to satisfy Subsection 1962(a));

2) acquired or maintained any interest in any enterprise via its submission of fraudulent reports about Plaintiff (so as to satisfy Subsection 1962(b));

3) conducted the affairs of an enterprise for which it worked or with which it had some association by its alleged submission of fraudulent reports about Plaintiff (so as to satisfy Subsection 1962(c)); or

4) conspired to do any of the foregoing things (so as to satisfy Subsection 1962(d)).

Accordingly, Plaintiff cannot proceed as a pauper to litigate a RICO Act claim based on the allegations in his Complaint because such a claim would fail as a matter of law and (given the clarity of such failure) would qualify as frivolous. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[5]

<u>Fraud and Related Claims under State Law</u>

Although (for reasons stated above, <u>see</u> <u>supra</u>, pp. 6-13) the particular federal statutory provisions identified by Plaintiff in his Complaint provide no legally-viable, non-frivolous basis for Plaintiff to pursue a claim that Defendant harmed him by presenting

_____

[5] If Plaintiff believes in good faith that additional facts exist that would allow him to make out the elements of a civil RICO Act claim under the standards set forth above, <u>see</u> <u>supra</u>, pp. 9-13, he may consider an amendment of his Complaint under Federal Rule of Civil Procedure 15.

false reports of his income to taxing authorities, the Court must engage in further analysis for two reasons. First, Plaintiff expressly indicated that he did not wish to limit the legal bases for his claim(s) to only the specific federal laws he cited in the Complaint. (See Docket Entry 2 at 2 (asserting that lawsuit "constitutes allegations of fraud and fraud related issues outlined [sic], but not limited to, Title 18 of the United States Code" (emphasis added)).) Second, in light of his pro se status, the Court must afford Plaintiff the benefit of liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (ruling that "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotation marks omitted)).

In considering whether legal grounds other than the federal statutes specifically cited in the Complaint might permit Plaintiff to maintain his instant action, the Court has identified no readily apparent federal cause of action applicable to the circumstances alleged by Plaintiff. However, because Plaintiff has presented allegations that raise a colorable prospect of diversity jurisdiction (see Docket Entry 2 at 5), the Court also must look to state law. See 28 U.S.C. § 1332. Given that the Complaint alleges that Defendant sent fraudulent reports of Plaintiff's income to a number of taxing authorities (see Docket Entry 2 at 3), a question

14

arises as to what state's (or states') laws the Court must consider in assessing this matter.

"Since federal jurisdiction here depends on diversity of citizenship, the applicable law must be determined by the choice of law rules of the forum state, North Carolina." <u>Brendle v. General Tire & Rubber Co.</u>, 408 F.2d 116, 116 (4th Cir. 1969); <u>accord</u> <u>Burris Chem., Inc. v. USX Corp.</u>, 10 F.3d 243, 245 n.7 (4th Cir. 1993) ("In a diversity suit federal courts must apply the rules of the forum state when addressing choice of law questions."). "The Supreme Court of North Carolina consistently has held that . . . [a] tort is deemed to have taken place, for choice of law purposes, in the jurisdiction in which the last event necessary to impose liability occurs." <u>Jordan v. Shaw Indus., Inc.</u>, Nos. 96-2189, -2190, -2191, -2192, -2371, -2373, 131 F.3d 134 (table), 1997 WL 734029, at *2 (4th Cir. Nov. 26, 1997) (unpublished) (citing <u>Boudreau v. Baughman</u>, 322 N.C. 331, 335-36, 368 S.E.2d 849, 854 (1988)); <u>see also</u> <u>Braxton v. Anco Elec., Inc.</u>, 330 N.C. 124, 126-27, 409 S.E.2d 914, 915 (1991) ("We do not hesitate in holding that as to the tort law controlling the rights of the litigants in the lawsuit allowed by this decision, the long-established doctrine of lex loci delicti commissi [i.e., law of the place where the wrong is committed] applies . . . ."). "[This choice of law] rule applies in fraud actions, as in most tort actions." <u>Jordan</u>, 1997 WL 734029, at *2.

"'When a person sustains loss by fraud, the place of the wrong is where the loss is sustained, not where fraudulent representations are made.'" Id. at *3 (quoting Restatement of Conflict of Laws § 377 n.4 (1934)). Moreover, the Jordan Court equated the moment of reliance upon a false representation with the onset of loss: "The 'last act' necessary for a fraud claim is the reasonable reliance on the false representation which causes the injury." Id.; see also Schriefer v. Stewart, No. 88-1038, 892 F.2d 1041 (table), 1989 WL 156878, at *3 (4th Cir. Dec. 27, 1989) (unpublished) ("[T]he injury allegedly resulting from [the defendants' fraudulent statements] took place in Maryland, where [the plaintiff's] acts in reliance occurred."); Madison River Mgt. Co. v. Business Mgt. Software Corp., 402 F. Supp. 2d 617, 620 (M.D.N.C. 2005) (Osteen, Sr., J.) (construing Jordan as treating point at which "reasonable reliance" occurred as point at which "injury" occurred). This conclusion raises additional questions because the injury about which Plaintiff complains resulted not from his reliance on alleged false representations by Defendant, but rather due to the reliance on such statements by third-parties, i.e., the Internal Revenue Service (perhaps in Washington, D.C., or perhaps at some regional office) and the States of North Carolina, South Carolina, Georgia, Florida, and Pennsylvania.

Accordingly, as to each of Defendant's allegedly fraudulent reports about Plaintiff's income, the substantive "fraud" law of

each jurisdiction where a taxing authority relied on such a report would control whether Plaintiff had a viable fraud claim for that aspect of Defendant's conduct.  This phenomenon presents particular complications in this case because "[c]ourts have reached different results with respect to whether a claim of fraud may be sustained where the misrepresentation sued upon was made to a third party who relied on the representation to the detriment of plaintiff." Siotkas v. LabOne, Inc., 594 F. Supp. 2d 259, 275 (E.D.N.Y. 2009). Plaintiff therefore might have a cause of action for fraud under the laws of one state to which Defendant allegedly submitted false statements about Plaintiff's income, but not under the laws of another state to which Defendant submitted the very same report.

In addition, "[s]ome states . . . recognize an animal called a 'prima facie tort,' a catchall for harmful intentional misconduct that eludes the familiar categories."  Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1042-43 (7th Cir. 1999).  As a result, even in states where the law governing traditional fraud claims requires proof of reliance by the plaintiff (not just reliance by a third-party), Plaintiff nonetheless might have a "related" tort cause of action based on the factual allegations in his Complaint. See generally Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 656-57 (2008) ("[W]hile it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause

17

legal injury only to those who rely on it. . . . [A]ny such notion
would be contradicted by the long line of cases in which courts
have permitted a plaintiff directly injured by a fraudulent
misrepresentation to recover even though it was a third party, and
not the plaintiff, who relied on the defendant's misrepresentation.
Indeed, so well established is the defendant's liability in such
circumstances that [Section 870 of] the Restatement (Second) of
Torts sets forth as a 'general principle' that 'one who
intentionally causes injury to another is subject to liability to
the other for that injury, if his conduct is generally culpable and
not justifiable under the circumstances.' As an illustration [in
Comment h], the Restatement provides the example of a defendant who
'seeks to promote his own interests by telling a known falsehood to
*or about* the plaintiff or his product.' And [Comment a to Section
435A of] the Restatement specifically recognizes 'a cause of
action' in favor of the injured party where the defendant 'defrauds
another for the purpose of causing pecuniary harm to a third
person.'" (internal brackets, citations, and footnote omitted)
(italics in original)); Barger v. Barringer, 151 N.C. 433, 437, 66
S.E. 439, 441 (1909) ("The law would be untrue to its soundest
principles if it declared that the wanton and needless infliction
of injury can ever be a legal right. . . . 'It has been considered
that prima facie the intentional infliction of temporal damage is
a cause of action, which, as a matter of substantive law, whatever

18

may be the form of pleading, requires a justification, if the defendant is to escape.'" (quoting <u>Aikens v. Wisconsin</u>, 195 U.S. 194, 204 (1904) (Holmes, J.))).

Given the number of state jurisdictions at issue in this case and the relative difficulty posed by the task of determining whether those different jurisdictions would allow a fraud or fraud-related claim under the circumstances at issue, the Court will not attempt to resolve at this preliminary stage the legal question of whether Plaintiff's Complaint states cognizable fraud or fraud-related claims under state law. Nor, at this point, will the Court pronounce Plaintiff's factual allegations regarding Defendant's conduct so implausible (to use the language of <u>Iqbal</u>, 129 S. Ct. at 1949) and/or so fanciful (to use the language of <u>Denton</u>, 504 U.S. 25, 32-33) as to warrant denial of pauper status, despite the Court's grave doubts that an interstate insurance company would risk federal and state criminal prosecution by submitting fraudulent reports to the Internal Revenue Service and state taxing authorities in order to carry out a campaign of spite against an insurance agent with whom it formerly had a business relationship.[6] Instead, on the limited record currently before it, the Court will

---

[6] Indeed, a document attached by Plaintiff to his Complaint suggests an explanation for Defendant's conduct other than spite-motivated fraud, i.e., that – as a function of the multi-party settlement involving Plaintiff and Defendant (referenced in the Complaint (Docket Entry 2 at 3)) – Defendant continued to pay Plaintiff "residual income" arising from insurance contracts in which Plaintiff had prior involvement, but the agency for whom Plaintiff previously worked had the right to retain those payments, rather than to pass them on to Plaintiff. (<u>See</u> Docket Entry 2-3 at 4.) A definitive determination of these matters, however, must await further development of the record.

grant Plaintiff's request to proceed as a pauper for the purpose of pursuing the factual allegations in his Complaint as state law claims (via this Court's diversity jurisdiction).

<u>Miscellaneous Matters</u>

Plaintiff included within his Complaint a request that the Court "assign a court appointed lawyer to represent [him] . . . ." (Docket Entry 2 at 15.) "[A] plaintiff does not have an absolute right to appointment of counsel." <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987). Instead, the provision of counsel through the auspices of the Court remains, "as [does] the privilege of proceeding <u>in forma pauperis</u>, a matter within the discretion of the District Court. It is a privilege and not a right." <u>Bowman v. White</u>, 388 F.2d 756, 761 (4th Cir. 1968).

In delineating the scope of a district court's discretion in this context, the United States Court of Appeals for the Fourth Circuit has held that the requesting litigant "must show that his case is one with exceptional circumstances." <u>Miller</u>, 814 F.2d at 966 (citing <u>Cook v. Bounds</u>, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984), <u>abrogated</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Mallard v. United States Dist. Ct. for S.D.</u>

_of Iowa_, 490 U.S. 296 (1989).[7]  More pointedly, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." _Gordon v. Leeke_, 574 F.2d 1147, 1153 (4th Cir. 1978).

At this point, Plaintiff has not shown either that he has a colorable claim or that he lacks the capacity to present any such claim.  First, although the Court has allowed this case to proceed beyond the initial screening phase, for reasons noted above, _see supra_, p. 19 & n.6, it appears highly unlikely that Plaintiff has a colorable claim.  Second, notwithstanding his protestations of mental limitations (_see_ Docket Entry 2 at 14), Plaintiff has shown the ability to state his factual allegations clearly and succinctly and an understanding of the basic litigation process.

The Court therefore will exercise its discretion to deny Plaintiff's request for assistance in securing counsel.  If a material change in the relevant circumstances develops at a later stage in the case, Plaintiff obviously may raise this issue again.

---

[7] In _Mallard_, the United States Supreme Court ruled that a court could _not_ make "compulsory assignments of attorneys in civil cases" pursuant to the provision in 28 U.S.C. § 1915 (then codified at subsection (d), now set out in subsection/paragraph (e)(1)) stating that a "'court may request an attorney to represent' an indigent litigant." _Mallard_, 490 U.S. at 300-01 (holding that statute's use of word "request" means that courts may ask, but may not command, attorneys to represent civil litigants).  The Supreme Court also declined to "express an opinion on the question whether the federal courts possess inherent authority to require lawyers to serve." _Id._ at 310.  In the absence of controlling authority recognizing any such inherent authority, if this Court determined that a litigant should receive assistance of counsel, the Court would seek out an attorney willing to provide representation on a pro bono basis.

Further, to aid Plaintiff in meeting his obligations to conduct this litigation properly, the Court will direct the Clerk to send Plaintiff copies of relevant portions of this Court's Local Rules and the Federal Rules of Civil Procedure.

In his Complaint, Plaintiff also "request[ed] free access to PACER and CM/ECF access as [he] may not have printer ink or paper or money to pay for postage and transportation to the post office and to and from the courts." (Id. at 15.) "Upon the approval of the assigned Judge, a party to a case who is not represented by an attorney may register as an CM/ECF Filing User in the CM/ECF System solely for the purpose of the action." M.D.N.C. R. 5.3(c)(2). To assist the Court in determining whether to allow Plaintiff to use the CM/ECF system under said Local Rule, Plaintiff shall file a motion with the Court indicating that he:

1) has the ability and willingness to attend training sessions offered by the Clerk's Office regarding the CM/ECF system;

2) has read and has comprehended the Court's Local Rule regarding Electronic Filing of Documents, M.D.N.C. R. 5.3; and

3) has read and has comprehended the Court's Electronic Case Filing Administrative Policies and Procedures Manual, Electronic Case Filing CM/ECF User's Manual, Instructions for Filing Large Documents, and Top Ten List of Common Errors Made by E-Filers (all of which Plaintiff can access on the Court's website, see

22

http://www.ncmd.uscourts.gov/cmecf/index.htm (last visited May 10, 2011)).[8]

**IT IS THEREFORE ORDERED** that – on the current record – Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED** subject to the condition that Plaintiff may commence this proceeding in this Court without prepayment of fees or costs, or giving security therefor, under 28 U.S.C. § 1915(a), to pursue fraud and/or fraud-related claims against Defendant based on the factual allegations in the Complaint to the extent permitted by applicable state laws (provided, as Plaintiff has alleged, diversity jurisdiction exists), but not to litigate such fraud and/or fraud-related claims under the various federal statutes identified in the Complaint.

**IT IS FURTHER ORDERED** that the Clerk shall send Plaintiff a summons form for Plaintiff to complete.

**IT IS FURTHER ORDERED** that Plaintiff shall prepare and shall deliver to the Clerk a properly-completed summons form for Defendant, including the correct address and the name and title of the individual to be served on behalf of Defendant. Failure by Plaintiff to deliver said summons form to the Clerk by May 31,

---

[8] In said Motion, Plaintiff also may set out his basis for requesting free access to PACER. The Court notes that, if Plaintiff receives permission to participate in the CM/ECF system, he will get one free viewing of all electronic filings at which time he can save an electronic copy for future reference.

2011, shall result in the dismissal of this action without further notice to Plaintiff.

**IT IS FURTHER ORDERED** that, upon Plaintiff's timely delivery of the properly-completed summons form for Defendant to the Clerk, the United States Marshal's Office shall serve the summons and Complaint upon Defendant.

**IT IS FURTHER ORDERED** that Plaintiff's request for appointment of counsel (<u>see</u> Docket Entry 1 at 15) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff may file a motion under this Court's Local Rule 5.3(c)(2) requesting permission to use the CM/ECF system and shall indicate in said motion whether he:

1) has the ability and willingness to attend training sessions offered by the Clerk's Office regarding the CM/ECF system;

2) has read and has comprehended the Court's Local Rule 5.3 regarding Electronic Filing of Documents; and

3) has read and has comprehended the Court's Electronic Case Filing Administrative Policies and Procedures Manual, Electronic Case Filing CM/ECF User's Manual, Instructions for Filing Large Documents, and Top Ten List of Common Errors Made by E-Filers.

**IT IS FURTHER ORDERED** that, to assist Plaintiff in meeting his obligations to conduct this litigation, the Clerk shall send Plaintiff copies of the Civil Rules portion of this Court's Local Rules and Rules 5, 6, 7, 8, 9, 10, 11, 15, 16, 26, 30, 31, 33, 34,

35, 36, 37, 45, 56 and 72, as well as Forms 1 and 2, of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Notice of Address Change with the Court in the event of any future changes in his address. Failure by Plaintiff to make such filings shall result in the dismissal of this action without further notice to Plaintiff.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 10, 2011