IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID A. BARDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-CV-340 |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

David Bardes filed this lawsuit on May 3, 2011, against Massachusetts Mutual Life Insurance Company, alleging that MassMutual filed W2s with various governmental entities that falsely asserted the payment of money to Mr. Bardes. (Doc. 2.) Mr. Bardes was allowed to proceed *in forma pauperis* on his state-law fraud and fraud-related claims. (Doc. 4 at p. 23.)[1] After service of process, MassMutual filed a motion to dismiss. (Doc. 10.) While that motion was pending, Mr. Bardes filed a motion for default judgment, (Doc. 14), and a motion for summary judgment. (Doc. 17.) The Court concludes that much of Mr. Bardes's claim has been released or is barred by the statute of limitations. As to his fraud claims arising on or after May 3, 2008, the Court will deny the motion to dismiss.

## **FACTS**

According to the complaint, Mr. Bardes was an insurance agent for MassMutual from 1986 to 1998. (Doc. 2 at ¶ 2.) The relationship came to an end in 1998 and litigation ensued.

---

[1] Pursuant to 28 U.S.C. § 1915, the Magistrate Judge concluded that some of Mr. Bardes's claims were frivolous and dismissed them. (Doc. 4 at 9-13, 25.) Mr. Bardes did not object. A decision pursuant to § 1915 that a litigant may proceed *in forma pauperis* is not determinative of a motion to dismiss. *See McLean v. United States*, 566 F.3d 391, 399-400 (4th Cir. 2009) (noting differences between § 1915 and Rule 12(b)(6) inquiries).

(*Id.*) That lawsuit was resolved in 1999. (*Id.*) Thereafter, MassMutual began sending annual "fake, false, and fraudulent W2 wage statement[s] to the US [sic] Treasury, the Internal Revenue Service, the Social Security Administration," and various states. (*Id.* at ¶ 3.)

MassMutual has filed a copy of a settlement agreement and release referenced by Mr. Bardes in the complaint. (Doc. 13.) It was signed by Mr. Bardes, MassMutual, and other litigants.[2] (*See id.*) Because it was referenced in the complaint and Mr. Bardes does not contest its authenticity, it is appropriate to consider the settlement agreement in connection with the motion to dismiss. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). That agreement contained mutual releases, required among other things a payment by Mr. Bardes of $37,500 to MassMutual, and reflected that Mr. Bardes had assigned his vested commission payments due in the future to David A. Bardes Organization, Inc. (Doc. 13 at pp. 4-5.)

## ISSUES

### I. MassMutual's Motion to Dismiss

MassMutual contends that the complaint should be dismissed for any one of several reasons: (1) the Settlement Agreement released the claims brought in this lawsuit; (2) the complaint fails to state a claim for relief because Mr. Bardes cannot show any injury and has not alleged reliance; and (3) most of the fraud claims are barred by the statute of limitations.

---

[2] Mr. Bardes's complaint explicitly refers to a settlement agreement and alleges that he and MassMutual entered into that agreement in 1999. (Doc. 2 at ¶ 2.) He did not attach a copy to the complaint and has not provided a copy in any other pleadings. MassMutual has filed a copy of a settlement agreement, (Doc. 13), signed by a David Anthony Bardes, (*id.* at p. 13), and a David Andrew Bardes, (*id.* at p. 14), in 2000. While in his briefing Mr. Bardes characterizes this settlement agreement as one between MassMutual and his father, (Doc. 18 at ¶ 2), he does not deny signing the agreement and in his complaint he acknowledges signing a settlement agreement. (Doc. 2 at ¶ 14.) Moreover, the materials attached by Mr. Bardes to his complaint identify him as David Andrew Bardes. (Doc. 2-4 at p. 2.)

2

### A. Failure to State a Claim for Relief

Under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a complaint must plead facts that show plausible liability, not just possible liability.  Although the Supreme Court has held that *pro se* complaints should be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

#### 1. Choice of Law

MassMutual contends that North Carolina law applies to Mr. Bardes's fraud claims.  Mr. Bardes has not addressed the issue.

"Since federal jurisdiction here depends on diversity of citizenship, the applicable law must be determined by the choice of law rules of the forum state, North Carolina." *Brendle v. Gen. Tire & Rubber Co.*, 408 F.2d 116, 116 (4th Cir. 1969).  North Carolina applies "the substantive law of the state where the injury occurred [to a plaintiff's] claims for common law fraud," *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 16, 598 S.E.2d 570, 581 (2004), and has consistently held that the *lex loci delicti* doctrine applies to actions sounding in tort. *E.g.*, *Boudreau v. Baughman,* 322 N.C. 331, 335-36, 368 S.E.2d 849, 853-54 (1988).

The factual record is not sufficient for the choice-of-law issue to be resolved with finality.  There is a good argument that the injury occurred upon receipt of the W2s, which presumably happened in North Carolina where he lives.  *See Stetser*, 165 N.C. App. at 14, 16-17, 598 S.E.2d at 579, 581 (appearing to assume that fraud claims would be governed by state of plaintiff's residence).  It could also be argued that the injury occurred when MassMutual mailed

3

or submitted the W2s; the state where this occurred is not in the record. The Court will assume that North Carolina law applies for purposes of this motion.

### 2. The Fraud Claim

Mr. Bardes has not alleged in his complaint that he relied on the false W2s. Rather, he alleges reliance by governmental agencies. He contends that this third-party reliance is sufficient or, in the alternative, that Mass Mutual has committed a prima facie tort.[3] Mr. Bardes has cited no case in which a "third-party reliance" theory or a prima facie tort cause of action has been adopted by a North Carolina court or by a court applying North Carolina law. On the other hand, MassMutual has cited no case in which either theory has been rejected by a North Carolina court or by a court applying North Carolina law.

It is well-established that the essential elements of a fraud claim under North Carolina law are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). A fraud claim ordinarily also requires proof that the plaintiff relied on the false representation by the defendant. *See e.g.*, *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007).

Some states have found fraud claims to exist when a fraudulent misrepresentation is made to a third party, who relies upon the misrepresentation to the detriment of the plaintiff. *See, e.g.*, *My First Shades v. Baby Blanket Suncare*, No. 08-CV-4599, ___ F. Supp. 2d ___, 2012 WL 6675118, at *11 (E.D.N.Y. Dec. 21, 2012) (describing New York law); *Gregory v. Brooks*, 35 Conn. 437, 446 (1868) (permitting plaintiff to recover against a defendant who, in order to

---

[3] In his brief in opposition to the motion to dismiss, Mr. Bardes did not specifically identify the causes of action he was pursuing or their elements, nor did he provide case law to support his contentions. (*See* Doc. 18.) Rather, he relied generally upon the Magistrate Judge's identification in the screening order of his possible causes of action. (*See id.* at ¶ 4.) If and when a summary judgment motion is filed, Mr. Bardes is directed to comply with Local Rule 56.1(e).

4

deprive plaintiff of business, misrepresented himself to be a superintendent of wharves and ordered a vessel unloading at plaintiff's wharf to leave). Other courts have rejected this theory, allowing recovery only when the plaintiff actually relied on the defendant's fraudulent statement. *See, e.g.*, *Compressed Gas Corp. v. U.S. Steel Corp.*, 857 F.2d 346, 352 (6th Cir. 1988) (describing Kentucky law); *Corbett v. Beneficial Ohio, Inc.*, 847 F. Supp. 2d 1019, 1027 (S.D. Ohio 2012) (describing Ohio law); *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 276 (D.D.C. 2011) (citing *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22-23 (D.C. Cir. 2008)) (describing District of Columbia law); *Traffic Jam Events, LLC v. Cortes*, No. 6:09-CV-146-Orl-19GJK, 2009 WL 1043977, at *3 n.1 (M.D. Fla. Apr. 17, 2009) (describing Florida law).

Some states recognize a "prima facie" tort for "harmful intentional misconduct that eludes the familiar categories." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042-43 (7th Cir. 1999) (collecting cases). The Restatement (Second) of Torts notes the general principle that "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability." Restatement (Second) of Torts § 870 (1979). The United States Supreme Court has called this principle "well established." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656-57 (2008).[4]

---

[4] While North Carolina courts have relied upon and accepted the Restatement in cases too numerous to list, the North Carolina Supreme Court has noted that "[e]xcept as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law." *Hedrick v. Rains*, 344 N.C. 729, 729, 477 S.E.2d 171, 172 (1996) (per curiam). While no North Carolina case has adopted § 870, North Carolina courts have adopted § 552's formulation of a related cause of action, negligent misrepresentation. *Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 525, 430 S.E.2d 476, 480 (1993).

Taking the allegations of the complaint as true, and putting aside any issues related to the Settlement Agreement, he has alleged that MassMutual has filed false W2s with various governmental entities; that he has never received the money MassMutual says on the W2s it has paid to him; that MassMutual's representations on the W2s that it has paid Mr. Bardes the stated sums of money are false; that MassMutual knows the W2s are false and is motivated by malice based on a long-ago business dispute in which Mr. Bardes accused MassMutual of theft; that various governmental agencies have relied upon MassMutual's false representations in the W2s in making decisions concerning Mr. Bardes; and that MassMutual's actions have deprived him of government benefits and caused him other problems and issues with governmental agencies.

The North Carolina Supreme Court has noted that "fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). It is difficult to believe that North Carolina courts would not provide redress to an innocent citizen who was victimized by a malicious person or company providing false W2s to governmental entities. *Cf. Bridge*, 553 U.S. at 656-59 (explaining, in dicta, that first-party reliance is not necessary to ensure "a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury" under traditional proximate-cause principles).

Indeed, in an analogous context, North Carolina courts recognize that a professional person may be held liable in tort for negligent performance of a contract that proximately caused foreseeable injury to a third person. *See United Leasing Corp. v. Miller*, 45 N.C. App. 400, 406-07, 263 S.E.2d 313, 317-18 (1980). In *United Leasing*, the court identified the factors relevant to evaluating whether the defendant had a legal obligation toward a third person as including

> (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and

6

the injury; (5) the moral blame attached to such conduct; and (6) the policy of
preventing future harm.

*Id.* at 406-07, 263 S.E.2d at 318. Applying those same factors to the facts alleged here, each weighs in favor of a cause of action for fraud. If negligent performance of a contract can in some circumstances trigger liability to a third party, it would be surprising if the same were not true in cases of intentional deception carried out for the purpose of harming a third party.

The Court shares the Magistrate Judge's skepticism that this is such a case. (Doc. 4 at p. 19 & n.6.) MassMutual has offered an explanation in its briefing that the money reflected in the W2s was for the vested commissions owed to Mr. Bardes, and was paid to the David A. Bardes Organization pursuant to an assignment by Mr. Bardes. At this stage, however, the Court is limited to the allegations of the complaint and is required to construe pro se pleadings liberally.

The Court concludes that the complaint states a cause of action for fraud. The Court will await a clarified factual record to determine the exact parameters of this claim.

### 3. Damages

MassMutual contends that Mr. Bardes has not been damaged by any irregularities in the W2s. This is a matter more appropriately raised at summary judgment.

### B. The Settlement Agreement

The Settlement Agreement contains a broad general release of MassMutual by Mr. Bardes, who was called "Bardes Jr." in the agreement:

> **4. General Releases.** Subject to and as limited by Paragraph 3, David A. Bardes Organization, Inc., Bardes Sr., Bardes Jr., Vero On-Line Inc. and On-Line Solutions, Inc. agree to release, remise and forever discharge, and by these presents do, for themselves, their heirs, executors and administrators, past, present and future predecessors, successors, assigns, subsidiaries and affiliates hereby release, remise and forever discharge MassMutual [and every possible affiliate] of and from *any and all claims, liens, demands, causes of action, obligations, and liabilities, known or unknown, that any of them ever had, now have or may hereafter claim to have against MassMutual by reason of any act or omission or anything else occurring up to and including the date of this Agreement*, including,

but not limited to [the claims asserted in the underlying cases and any claims that could have been raised in those cases].

(Doc. 13 at pp. 6-7) (emphasis added in italics).[5]

This released MassMutual from any claims that existed when the Settlement Agreement was signed, regardless of whether the party knew of the claims, and any inchoate claims based on past acts or omissions. The complaint specifically alleges that MassMutual issued false W2s to him beginning in 1998. No fraud claim can exist for any action taken by MassMutual before the Settlement Agreement, because Mr. Bardes explicitly released those claims.

It is less clear whether Mr. Bardes released any claims arising out of W2s issued after the Settlement Agreement was signed. While the Settlement Agreement does explicitly contemplate future payments to Mr. Bardes for commissions, one cannot tell from the face of the complaint and the Settlement Agreement if the amounts of the allegedly false W2s are in fact for those commissions. This does not appear to be appropriate for decision on a motion to dismiss. Mr. Bardes has alleged that the W2s are false, and the Court is bound to accept that allegation as true for purposes of a Rule 12(b)(6) motion.

### C. The Statute of Limitations

MassMutual contends that the statute of limitations bars a fraud or prima facie tort claim related to any of the allegedly false W2s issued more than three years before filing of this suit, that is, before May 3, 2008. As a general rule, a motion to dismiss can reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred, only when "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis

---

[5] By the terms of the Settlement Agreement, Connecticut law applies to its interpretation. (Doc. 13 at p. 12.)

omitted); *see also Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 440-41 (M.D.N.C. 2011). This is a case where the statute of limitations bar is clear on the face of the complaint.

The choice of law difficulties that arise in connection with the substantive fraud claim are not present in connection with the statute of limitations. It is clear that the North Carolina statute of limitations for fraud claims applies. The Court must make the same choice of law that a North Carolina state court would make about the statute of limitations. *See Guar. Trust Co. v. York*, 326 U.S. 99, 108-12 (1945); *Goad v. Celotex Corp.*, 831 F.2d 508, 510 (4th Cir. 1987). According to North Carolina's choice of law rules, as traditionally applied, North Carolina law controls procedural matters such as determining the statute of limitations. *Boudreau,* 322 N.C. at 340, 368 S.E.2d at 857; *Stetser*, 165 N.C. App. at 15-16, 598 S.E.2d at 580-81; *MedCap Corp. v. Betsy Johnson Health Care Sys., Inc.*, 16 F. App'x 180, 182 (4th Cir. 2001); *Wener v. Perrone & Cramer Realty, Inc.*, 137 N.C. App. 362, 365, 528 S.E.2d 65, 67 (2000).

The statute of limitations in North Carolina for fraud and general injury to a person, such as prima facie tort if it exists in North Carolina, is three years. N.C. Gen. Stat. § 1-52. The majority of the allegedly false representations made by MassMutual occurred more than three years before filing, and action on them is time-barred. This lawsuit was filed on May 3, 2011. Therefore, the motion to dismiss should be granted for all claims arising out of W2s issued before May 3, 2008.

### II. Mr. Bardes's Motion for Default Judgment

Mr. Bardes is not entitled to default judgment. MassMutual timely filed a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

### III. Mr. Bardes's Motion for Summary Judgment

Mr. Bardes has not submitted any evidence in support of his motion for summary judgment. Moreover, the motion is premature. It should be denied without prejudice.

It is **ORDERED** that the Motion to Dismiss, (Doc. 10), is **GRANTED** as to all claims arising out of W2s issued before May 3, 2008, and is otherwise **DENIED**. The Motion for Default Judgment, (Doc. 14), is **DENIED** and the Motion for Summary Judgment, (Doc. 17), is **DENIED** without prejudice.

This the 21st day of March, 2013.

_____
UNITED STATES DISTRICT JUDGE